BUCKNER V. LAKES OF SOMERSET

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-02-389-CV

RICHARD AND HELEN BUCKNER APPELLANTS

V.

LAKES OF SOMERSET HOMEOWNERS APPELLEE

ASSOCIATION, INC.

------------

FROM THE 17
TH
 DISTRICT COURT OF TARRANT COUNTY

------------

OPINION

------------

Introduction

Appellants Richard and Helen Buckner appeal from the trial court’s grant of summary judgment in favor of appellee the Lakes of Somerset Homeowners Association, Inc. (LSHOA).  In three issues, the Buckners contend that the trial court abused its discretion in granting the summary judgment and in denying the Buckners’ motion for new trial and motion for continuance to respond to LSHOA’s motion for summary judgment.  We reverse and remand.

Background Facts

The Buckners own a home in the Lakes of Somerset Addition, which is subject to deed restrictions requiring that all changes to the exterior of existing structures must be approved by an Architectural Control Committee (ACC).   On or about November 3, 2001, the Buckners delivered sample roofing materials to Vince Rosen, chairman of the ACC, and requested immediate approval of the materials so they could begin reroofing their home the next day. When the Buckners called the next day to ask if the materials were approved, Rosen informed them the ACC could not decide by the Buckners’ 24-hour deadline, but would instead meet to consider the request as soon as possible. The Buckners began replacing the existing roof without the ACC’s approval.  

The ACC subsequently met on November 10, 2001 and denied the Buckners’ request for approval of the roofing material.  The Buckners appealed the decision to the LSHOA Board of Directors (the Board).  On November 18, 2001, the Board met to consider the appeal.  During the meeting, the Board went to the Buckner home to view the materials that had already been installed.  Richard Buckner told the Board that if it did not approve of the materials, his roofing contractor would replace them at no charge.  The Board voted unanimously to deny the Buckners’ appeal and advised the Buckners of its decision in a letter dated November 19, 2001.

Instead of removing the disapproved roofing materials and submitting alternative materials for approval, the Buckners continued to complete the roof.  Rosen called the Buckners on December 1, 2001 and asked them to stop working on the roof, but Richard told Rosen he “did not agree with the Board’s decision” and that “the Board was wrong.”  The Buckners continued work on the roof.  The Board subsequently engaged counsel and, after numerous attempts to resolve the dispute, LSHOA filed suit against the Buckners on April 8, 2002, alleging that the Buckners’ new roof violated the LSHOA deed restrictions and requesting damages and injunctive relief.

The Buckners filed an answer on May 3, 2002, in which they alleged the following as affirmative defenses: (1) the ACC unreasonably withheld its approval of the roofing material because it had previously approved the use of the same or substantially the same material on two other homes in the addition; (2) the ACC’s denial of approval of the Buckners’ roofing materials was arbitrary, capricious, and racially motivated; and (3) LSHOA did not file suit to enjoin the use of the disapproved materials before installation was completed as required by the deed restrictions.

On July 16, 2002, LSHOA filed a motion for partial summary judgment alleging that it was entitled to judgment as a matter of law because the uncontroverted summary judgment evidence showed that the Buckners knowingly replaced their roof with unapproved materials and that they could not prove any of their defenses.  The trial court set a hearing on the motion for September 13, 2002.  On September 10, 2002, the Buckners filed a motion for continuance to respond to the motion on the grounds of inability to obtain necessary supporting affidavits despite diligent efforts to do so and counsel’s scheduling conflicts due to other lawsuits.  The trial court denied the continuance, but granted LSHOA’s motion for partial summary judgment.

LSHOA filed a second motion for partial summary judgment on November 8, 2002, asking that the trial court award it damages, attorney’s fees, and injunctive relief because it had prevailed on the liability issues.  In their response, the Buckners attached evidence related to the liability issues previously decided by the trial court.  The trial court signed a final judgment granting LSHOA a permanent injunction against the Buckners and awarding LSHOA its attorney’s fees, but no damages.

The Buckners filed a motion and amended motion for new trial alleging, among other things, that newly discovered evidence existed that was unavailable to the Buckners when the trial court granted the first partial summary judgment, which would likely produce a different result if a new trial were ordered.  The trial court denied both motions without conducting a hearing.

Analysis

In their first issue, the Buckners contend the trial court erred in granting partial summary judgment to LSHOA on the liability issues because the deed restrictions provide that approval of the roofing material was unnecessary if LSHOA did not sue to enjoin replacement of the roof before its completion and because the evidence raises a fact issue on their affirmative defenses that the ACC’s withholding of approval for the replacement roof was unreasonable, arbitrary, capricious, and racially motivated.  We consider the evidence in the light most favorable to the Buckners in order to determine if a genuine issue of material fact exists that would preclude summary judgment.  
See Little v. Smith
, 943 S.W.2d 414, 415 (Tex. 1997); 
Ryland Group, Inc. v. Hood
, 924 S.W.2d 120, 121 (Tex. 1996).  Article VI of the deed restrictions, entitled “Architectural Control,”  provides in pertinent part:

[N]or shall any exterior addition to or change or alteration therein be made until the details . . . shall have been submitted to and approved in writing . . . by [the ACC]. . . .  In the event the [ACC] fails to approve or disapprove any such detail, design, plan, specification or location within thirty (30) days after submission to it, 
or in 
any
 event if no suit to enjoin has been commenced prior to the completion thereof, approval will not be required and this Article will be deemed to have been fully complied with
.  [Emphasis added.]

We review a trial court’s interpretation of a restrictive covenant de novo.  
Air Park-Dallas Zoning Comm. v. Crow Billingsley Airpark, Ltd.
, 109 S.W.3d 900, 909 (Tex. App.—Dallas 2003, no pet.).  We construe restrictive covenants in accordance with general rules of contract construction.  
Pilarcik v. Emmons
, 966 S.W.2d 474, 478 (Tex. 1998).  A covenant is “unambiguous as a matter of law if it can be given a definite or certain legal meaning.”  
Id
. (quoting 
Grain Dealers Mut. Ins. Co. v. McKee
, 943 S.W.2d 455, 458 (Tex. 1997)).  Mere disagreement over the interpretation of a restrictive covenant does not render it ambiguous.  
Air-Park Dallas
, 109 S.W.3d at 909.  Words used in a restrictive covenant may not be enlarged, extended, stretched, or changed by construction, but will be given their commonly accepted meanings.  
Id
.

A restrictive covenant should be liberally construed to give effect to its purpose and intent.  
Tex. Prop. Code Ann.
 § 202.003(a) (Vernon 1995).  However, doubts should be resolved in favor of the free and unrestricted use of the premises, and any ambiguity must be strictly construed against the party seeking to enforce the restrictive covenant.  
Dyegard Land P’ship v. Hoover
, 39 S.W.3d 300, 308-09 (Tex. App.—Fort Worth 2001, no pet.). 

Both the Buckners and LSHOA contend that the emphasized language is unambiguous; however, they disagree on its meaning.  The Buckners claim that the phrase “in any event” means that regardless of whether the ACC timely approved or disapproved of replacement roofing materials, it was required to file suit to enjoin the Buckners’ activities before the roof was completed.  LSHOA contends that the phrase should be read to mean that it was required to file suit to enjoin the Buckners’ activities only in the event the ACC failed to approve or disapprove of the materials within 30 days after the Buckners requested approval.

We agree that Article VI is unambiguous.  After describing one manner in which approval will be deemed, in 
the
 event the ACC fails to approve or disapprove submitted plans within 30 days after submission, the article continues by describing another manner of deemed approval:  LSHOA’s failure to file suit before the roof is complete.  The use of the word “any” shows an intent to describe all scenarios other than those in which the ACC gives its explicit approval or fails to disapprove submitted plans within 30 days:  when the homeowner has not complied with Article VI by requesting preapproval or when the ACC has denied approval and the homeowner continues making alterations in accordance with the disapproved plans.  LSHOA’s proposed interpretation would render the “in any event” language meaningless; if the ACC does not approve or disapprove of the submitted plans within 30 days, the plans are deemed approved in accordance with Article VI.  Thus, a subsequent suit to enjoin activities completed in accordance with such plans would be pointless because LSHOA would lose.

LSHOA contends that 
Pilarcik v. Emmons
 controls this issue because the supreme court construed the same language in that case and determined that “the covenants [in that case] dictate default consequences in the event the ACC does not act swiftly enough.”  966 S.W.2d at 480.  The covenant in 
Pilarcik
 is almost identical to the covenant in this case.  LSHOA contends that the quoted language indicates that “default consequences” should occur 
only
 if the ACC does not approve or disapprove of a homeowner’s plans timely enough.  However, in 
Pilarcik
 a group of individual homeowners, rather than the homeowners association, sued the nonconforming homeowner, and the issue was whether the ACC could 
grant
 approval of nonconforming materials 
after
 the 30 day period had expired.  
Id
. at 476, 479-80.  The homeowners filed suit when the roof was 98 percent complete; thus, the second part of the covenant, which is at issue in this case, was not at issue in that case.  
Id
. at 477.  Further, the quoted language from 
Pilarcik
 supports our conclusion:  by not filing suit before the Buckners completed construction of their new roof, i.e., by not acting swiftly enough, LSHOA may suffer default consequences, i.e., the nonconforming roofing materials being deemed approved.

LSHOA judicially admitted in its original petition that the Buckners had completed replacing their roof before it filed suit.  
See Holy Cross Church of God in Christ v. Wolf
, 44 S.W.3d 562, 568 (Tex. 2001) (defining judicial admission and its effect).  “A judicial admission ‘not only relieves [an] adversary from making proof of the fact admitted but also bars the party himself from disputing it.’”  
Horizon/CMS Healthcare Corp. v. Auld
, 34 S.W.3d 887, 905 (Tex. 2000) (quoting 
Gevinson v. Manhattan Constr. Co.
, 449 S.W.2d 458, 466 (Tex. 1969)); 
see Tex. Dep’t of Pub. Safety v. Stanley
, 34 S.W.3d 321, 322 (Tex. App.—Fort Worth 2000, no pet.).  Thus, LSHOA’s own pleadings show that it was not entitled to summary judgment because LSHOA did not file suit before the Buckners’ roof was complete.  Accordingly, we hold that the trial court erred in granting partial summary judgment to LSHOA on the liability issues.  We sustain the Buckners’ first issue.
(footnote: 1)
 Having sustained the Buckners’ first issue, we reverse the trial court’s judgment in favor of LSHOA and remand the case for further proceedings.
(footnote: 2)

TERRIE LIVINGSTON

JUSTICE

PANEL B: LIVINGSTON, DAUPHINOT, and HOLMAN, JJ.

DELIVERED:  March 25, 2004

FOOTNOTES
1:
Because we sustain the Buckners’ first issue, we do not address whether a fact issue exists with regard to the Buckners’ other affirmative defenses, nor do we address the Buckners’ second and third issues.  
See
 
Tex. R. App. P.
 47.1.

2:
Because we have determined that LSHOA failed to show it was entitled to partial summary judgment in accordance with its motion and because the Buckners did not seek their own summary judgment on the liability issues, we cannot render judgment for the Buckners and must remand to the trial court for further proceedings consistent with this opinion.  
See
 
Tex. R. App. P.
 43.2(d), 43.3(a); 
CU Lloyd’s of Tex. v. Feldman
, 977 S.W.2d 568, 569 (Tex. 1998).