COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.
2B04-207-CV

 

 

RAMAN CHANDLER PROPERTIES, L.C.,                                 APPELLANTS

VILLAS
AT CALDWELL CREEK, LTD., AND

CALDWELL=S
CREEK, LTD.

 

                                                   V.

 

CALDWELL=S CREEK HOMEOWNERS                                         APPELLEE

ASSOCIATION,
INC.

 

                                              ------------

 

           FROM
THE 352ND DISTRICT COURT OF TARRANT COUNTY

 

                                              ------------

 

                                             OPINION

 

                                              ------------








Appellants Raman Chandler
Properties, L.C. (the Managing Partners), Villas at Caldwell Creek, Ltd. (The
Villas), and Caldwell=s Creek,
Ltd. (the Developer) appeal from a declaratory judgment the trial court granted
in favor of appellee Caldwell=s Creek Homeowners Association, Inc. (the Association) in connection
with an access easement located in the Caldwell=s Creek Addition (the Addition). 
After a trial to the court, it rendered judgment in favor of the
Association and determined that the easement and common areas were for the sole
benefit and exclusive use of the homeowners of the Addition and that therefore
the Managing Partners and the Developer had no authority to grant an access
easement to The Villas.  The trial court
also granted the Association its attorneys= fees under sections 37 and 38 of the civil practices and remedies
code.  We affirm.

                                       I.  Factual Summary








The Developer was the owner
of 57.9 acres in the Colleyville area of Tarrant County that it planned to
develop for high-end residential use. 
The Developer is a Texas limited partnership whose general managing
partner is Raman Chandler Properties, L.C. (the Managing Partner).[1]  According to the plat for the Addition, the
Developer dedicated a common area consisting of all Aprivate, open spaces, Lot 39, Block 2 and Median and the 20-foot strip
along Lot 41, Block 2 . . . as defined in the Deed Restrictions.@  These areas were developed
with parks, small streams, ponds, and walkways. 
After various amendments to the plats, the common areas in the Addition
consisted of all private open spaces and Lots 39, 40A, and 41A, Block 2 and the
median at Caldwell Creek Drive.








From 1994 through 1999 the
Developer sold lots in the Addition.  In
October 1999 the Association was formally incorporated as Caldwell=s Creek Homeowners Association, Inc. 
In December 1999, however, the Developer executed an easement agreement
(the Easement Agreement) granting access to the Addition=s common areas in favor of The Villas, an adjacent development.  The Developer for the Addition was also the
developer for The Villas.  The purported
access easement was a twenty-foot easement that ran generally north and south
along the east property line of the Addition, along the east edge of Lots 39
and 40A of Block 2 of the Addition, and adjacent to a portion of The
Villas.  It ran from the north end at
John McCain Road to the southeast corner of the Addition where it abutted a
railroad right of way forming the lower boundary of the Addition.  Under the easement=s terms, the Association remained obligated for all expenses incurred
maintaining the common areas, with The Villas assuming the expense and
maintenance of a new iron and brick fence along their common border with the
Addition.  As a result, lot owners in The
Villas gained virtually free and uninterrupted pedestrian access from The
Villas to John McCain Road over the Addition=s common areas as well as full access and use of the Addition=s common areas.  This was so
despite the fact that The Villas already had access to John McCain Road over
and through its own development and by virtue of its most northerly border that
abutted John McCain Road.

After granting the easement,
the Developer removed the pre-existing wooden privacy fence along the common
border between the two additions.  Then,
in January 2000 the Developer deeded the lots in the common areas of the
Addition to the newly formed Association, but the conveyance was specifically
subject to the just-granted access easement in favor of The Villas.  Simultaneously, the Developer assigned all of
its rights, powers, and authority in the Addition to the Association.

The Association rejected the
deed by written notice to the Developer=s Managing Partner.  The
Association claimed that the property had already been conveyed to it by
operation of law when the Association was formed.  It claimed it was not subject to the
Developer=s newly
created Easement Agreement with The Villas and demanded its removal.  When the Developer refused, the Association
ultimately filed this suit.  The case was
tried to the court, which rendered judgment for the Association.

                                       II.  Issues Presented








In six issues appellants
challenge the trial court=s judgment
in favor of the Association.  In their
first issue, they challenge the trial court=s determination that the common areas were for the Asole and exclusive use@ of the homeowners in the Addition.[2]

In their second issue,
appellants assert trial court error in basing its judgment on Aestoppel in pais,@ claiming that there were no pleadings to support that theory.  Additionally, appellants raise legal and
factual sufficiency challenges to the conclusion that estoppel in pais
precluded the Managing Partner and the Developer from granting easement rights
that affect the Addition=s common areas.  Here, appellants challenge findings of fact
fifteen and sixteen and conclusions of law nine and ten. 

In their third issue,
appellants assert that the trial court erred in concluding that the Developer
was barred from granting an easement affecting the common areas of the Addition
for the use and benefit of The Villas.[3]








In their fourth issue,
appellants assert trial court error in finding that the December 17, 1999
Easement Agreement is null and void, thereby voiding the language in the
Special Warranty Deed from the Developer to the Addition that made that grant
subject to the Easement Agreement.[4]

In their fifth and sixth
issues, appellants allege trial court error in awarding the Association its
attorneys= fees under
either the declaratory judgments act  or
chapter 38 of the civil practices and remedies code.

                                    III.  Standards of Review








A
legal sufficiency challenge may only be sustained when:  (1) the record discloses a complete absence
of evidence of a vital fact; (2) the court is barred by rules of law or of
evidence from giving weight to the only evidence offered to prove a vital fact;
(3) the evidence offered to prove a vital fact is no more than a mere
scintilla; or (4) the evidence establishes conclusively the opposite of a vital
fact.  Uniroyal Goodrich Tire Co. v.
Martinez, 977 S.W.2d 328, 334 (Tex. 1998), cert. denied, 526 U.S. 1040
(1999); Robert W. Calvert, "No Evidence"
and "Insufficient Evidence" Points of Error, 38 TEX. L. REV. 361, 362-63 (1960).  In determining
whether there is legally sufficient evidence to support the finding under
review, we must consider evidence favorable to the finding if a reasonable
factfinder could, and disregard evidence contrary to the finding unless a
reasonable factfinder could not.  City
of Keller v. Wilson, 48 Tex. Sup. Ct. J. 848, 863,
2005 WL
1366509, at *14 (Tex. June 10, 2005). 

If
a party is attacking the legal sufficiency of an adverse finding on an issue on
which the party had the burden of proof, and there is no evidence to support
the finding, we review all the evidence to determine whether the contrary
proposition is established as a matter of law.  Dow Chem. Co. v. Francis, 46 S.W.3d 237,
241 (Tex. 2001); Sterner v. Marathon Oil Co., 767 S.W.2d 686, 690 (Tex.
1989).

An assertion that the
evidence is factually insufficient to support a fact finding means that the
evidence supporting the finding is so weak or the evidence to the contrary is
so overwhelming that the answer should be set aside and a new trial
ordered.  Garza v. Alviar, 395
S.W.2d 821, 823 (Tex. 1965).  We are
required to consider all of the evidence in the case in making this
determination, not just the evidence that supports the finding.  Mar. Overseas Corp. v. Ellis, 971
S.W.2d 402, 406-07 (Tex.), cert. denied, 525 U.S. 1017 (1998).








Findings of fact entered in a
case tried to the court have the same force and dignity as a jury=s answers to jury questions.  Anderson
v. City of Seven Points, 806 S.W.2d 791, 794 (Tex. 1991).  The trial court=s findings of fact are reviewable for legal and factual sufficiency of
the evidence to support them by the same standards that are applied in
reviewing evidence supporting a jury=s answer.  Ortiz v. Jones,
917 S.W.2d 770, 772 (Tex. 1996); Catalina v. Blasdel, 881 S.W.2d 295,
297 (Tex. 1994).  Unchallenged findings
of fact are binding unless the contrary is established as a matter of law or
there is no evidence to support the findings. 
McGalliard v. Kuhlmann, 722 S.W.2d 694, 696 (Tex. 1986); Reliance
Ins. Co. v. Denton Cent. Appraisal Dist., 999 S.W.2d 626, 629 (Tex. App.CFort Worth 1999, no pet.). 
Conclusions of law may not be challenged for factual sufficiency, but
they may be reviewed to determine their correctness based upon the facts.  Mehan v. WAMCO XXVIII, Ltd., 138
S.W.3d 415, 418 (Tex. App.CFort Worth 2004, no pet.); Rogers v. City of Fort Worth, 89
S.W.3d 265, 277 (Tex. App.CFort Worth 2002, no pet.); Forbis v. Trinity Universal Ins. Co.,
833 S.W.2d 316, 319 (Tex. App.CFort Worth 1992, writ dism'd).

The trial court filed
thirty-six findings of fact and twelve conclusions of law.  Appellants have not challenged findings of
fact one, two, five, six, ten, fourteen, seventeen, eighteen, twenty,
twenty-two, thirty-one, thirty-two, thirty-three, thirty-four, thirty-five, or
thirty-six or conclusions of law two, five, seven, or twelve.  We will so note the effect of this where
appropriate to the analysis of the issues raised. 

 








                                          IV.  Discussion

A. 
Overview

Key to a discussion of
appellants= issues on
the merits is the central question of when and if a developer loses its right
to make adjustments to a dedicated plat of a subdivision and what rights, if
any, inure to the benefit of the homeowners who purchase lots within a
subdivision during the start-up phase of the developmentCbefore the deed restrictions allow for or establish the actual
homeowners= association
that will ultimately hold the obligations and duties previously held by the
developer.  Answers to these questions
will establish the framework for our analysis of the issues raised by
appellants in this appeal.  We turn first
to issues one, three, and four, which they discuss together.

B. 
Restrictive Covenants

We review a trial court=s interpretation of restrictive covenants de novo.  Buckner v. Lakes of Somerset Homeowners
Ass=n, Inc., 133 S.W.3d 294, 297 (Tex. App.CFort Worth 2004, pet. denied). 
We apply general rules of contract construction when construing
restrictive covenants.  Id.; see
also Pilarcik v. Emmons, 966 S.W.2d 474, 478 (Tex. 1998).  If the covenant has a definite or certain
meaning, it is unambiguous as a matter of law. 
Buckner, 133 S.W.3d at 297.








A restrictive covenant should be liberally
construed to give effect to its purpose and intent.  Tex.
Prop. Code Ann. ' 202.003(a)
(Vernon 1995).  However, doubts should be
resolved in favor of the free and unrestricted use of the premises, and any
ambiguity must be strictly construed against the party seeking to enforce the
restrictive covenant.  Dyegard Land P=ship
v. Hoover, 39 S.W.3d 300, 308-09 (Tex. App.CFort
Worth 2001, no pet.).

 

Id.; see
also Youssefzadeh v. Brown, 131 S.W.3d 641, 644-45 (Tex. App.CFort Worth 2004, no pet.).

Texas has long recognized the
use of restrictive covenants in the development of real estate
subdivisions.  See Davis v. Huey,
620 S.W.2d 561, 565 (Tex. 1981); City of Corsicana v. Zorn, 97 Tex. 317,
78 S.W. 924, 925 (1904).  AA subdivision developer is generally free to amend restrictions in
covenants for the subdivision prior to the sale of lots in the subdivision,
assuming the amendments do not violate public policy.A  Youssefzadeh, 131
S.W.3d at 644; see also Hill v. Trigg, 286 S.W. 182, 183 (Tex. Comm'n
App. 1926, judgm't adopted).  However,
the sale of subdivision lots usually triggers amendment mechanisms set forth in
the dedication.  Dyegard, 39
S.W.3d at 313.  When the power to amend
the land use restriction is reserved to the developer, the amendment of a
restrictive covenant must be in the precise manner authorized by the dedicating
agreement.  Id.








AGenerally,
landowners have the unilateral or >ex parte= right . . .
to impose any restrictions they choose, to alter or cancel restrictions, or to
abrogate them in their entirety, so long as no lots . . . have been sold.@  Id.  While in some restrictions the power to amend
covenants and restrictions may be reserved to the developer, any amendments
must be in the exact manner provided in the dedication.  Id. 
We look to the restrictions to see if three conditions have been
met.  We must determine who has the right
to amend the restrictions and the method for amending them; whether the
amendment corrects, improves, or reforms the restrictions rather than
destroying them; and whether the amendment is illegal or against public
policy.  Id. 

AA >restrictive covenant= is a negative covenant that limits permissible uses of land.@  Voice of Cornerstone Church
Corp. v. Pizza Prop. Partners, Inc., 160 S.W.3d 657, 665 (Tex. App.CAustin 2005, no pet.).  The
covenant attaches and burdens the land in one of two ways: Aas a covenant that runs with the land at law or as an equitable
servitude.@  Id. 
A covenant runs with the land if 1) it touches and concerns the land, 2)
it relates to a thing in existence or specifically binds the parties and their
assigns, 3) the original parties to the covenant intended it to run with the
land, and 4) the successor to the burden has notice of the
restriction/covenant.  Id.

When we look at the
restrictions for this Addition we see the following language:








[Declarant] does hereby
impress upon said property the following restrictive covenants which will run
with the land and shall be binding on all persons claiming under it,
as well as upon all persons to whom may own, lease or occupy said land or any
part thereof for a term of fifty (50) years from the date that this Declaration
is recorded. [Emphasis added.]








By section 16 of the restrictions, each lot owner
gives the Developer a power of attorneyCa unilateral right to perform any act on behalf of other owners for a
three-year-period ending on the earlier of the third anniversary of the filing
of the plat dedication or when the developer no longer owns lots within
the subdivision.  Section 17 declares
that these covenants and restrictions Ashall run with and bind the land . . . for a term of fifty (50) years.@  Section 18 states that the
Developer can make amendments to the plat, covenants, and restrictions during
this same three-year-period.  After the
three-year-period expires, approval of seventy percent of the lot owners is
required before any amendment can be effective. 
Section 26, called ACommon Open Space,@ includes, but is not limited to, designated parks, common access
easements, and common areas provided by the Developer or the Association.  Section 27 establishes the homeowners= association once seventy to ninety percent of the homes are
constructed.  Mandatory membership in the
Association exists for each lot owner. 
Once the Association is created and the organizational meeting held, the
Association Ashall be
responsible for and assess reasonable and appropriate fees for the maintenance
of the Common Open Space.A

The Addition=s amended final replat of September 23, 1994 preserved the prior
provisions of the original plat, stating that @[a]ll private open spaces, Lot 39, Block 2 and median and the 20 foot
strip along Lot 41, Block 2, will be owned and maintained by the
Homeowners= Association
of Caldwell=s Creek
Addition as defined in the deed restrictions.@  [Emphasis added.] 

By the fall of 1999, seventy
percent of the lots in the Addition had been sold; the Developer called an
association organizational meeting on October 13, 1999 and established an
interim homeowners= association
board.  The Association=s articles of incorporation were filed on October 14, 1999.  The first annual meeting was called November
9, 1999, at which time the officers and board members were elected.

At about this same time, the
Developer was in the process of creating The Villas.  The Villas development was located along the
eastern border of the Addition and was comprised of less expensive, zero lot
line patio homes. 








In the fall of 1999, the
Developer approached the Association about merging with The Villas= association and giving The Villas access to the Association=s common areas.  The Association
indicated it would consider a contractual arrangement giving access to its open
and common areas to The Villas in exchange for some proportionate
responsibility for the maintenance costs of these areas.  The Developer never pursued this offer.

Instead, on December 17, 1999
the Developer unilaterally, and without the consent of the Association, executed
an easement agreement in favor of The Villas, granting it free and
uninterrupted pedestrian access from The Villas to John McCain Road via a
twenty-foot-wide strip running in a northerly direction along the eastern edge
of the Addition=s common
areas.  The Easement Agreement was
executed by the Developer=s Managing
Partner, purportedly on behalf of both the Developer and The Villas.  The Developer then removed the pre-existing wooden
privacy fence that had segregated the Addition from The Villas.  Counsel for The Villas notified the
Association of the Easement Agreement by letter dated March 15, 2000 that
enclosed a copy of the agreement, notified the Association of The Villas= (or the Developers=)  intent to construct a lower
brick and wrought iron fence along its border with the Addition, and warned the
Association not to interfere.

Then, on January 21, 2000 the
Developer executed a special warranty deed, purporting to convey Lots 39, 40A,
and 41A of Block 2 of the Addition, the common areas along the eastern and
southern borders of the Addition, to the Association.  However, the deed made the conveyance subject
to the purported December 17 easement for the benefit of The Villas. 








From the record, we can
determine that the original dedication and recording of the plat for this
Addition occurred on May 9, 1994.  Thus,
we conclude, as did the trial court in findings of fact ten and eleven, that on
May 9, 1997 the three-year-period during which the Developer could amend the
plat or the dedication and restrictions without seventy percent of the lot
owners= approval had expired.[5]  Thus, by the time the Developer attempted to
convey any interest in the Addition to The Villas it had already lost the right
to amend the restrictions without at least seventy percent of the homeowners= approval.  Appellants do not
contend that they obtained approval of seventy percent of the lot owners for
any amendments to the restrictions or authority to convey any portion of or any
interest in the lots that had been previously dedicated to or for the use and
benefit of the Addition.








Additionally, the record
shows that litigation between the Developer and the City of Colleyville
regarding Lots 40 and 41, Block 2 had concluded such that those lots had been
returned to the subdivision released from the obligation to commit those lots
for use as a future park.  The Developer
filed an amended replat in 1998 returning these lots to their prior use to be Aowned and maintained@ by the Association.  The
amended corrected replat filed on January 13, 1999 contains the following
language:

All private open space, Lot
39, Block 2 [formerly Lots 40 and 41, 
Block 2] and Median at Caldwell Creek Drive will be owned and maintained
by the Homeowners Association of Caldwell=s Creek Addition as defined in the Deed Restrictions. 

Appellants argue that the
trial court erred in concluding that the plats, dedication, and restrictive
covenants, along with the amended replats, conveyed the common areas to
the Association as found by the trial court in conclusion of law one.  Appellants contend that these instruments are
not instruments of conveyance and that, therefore, the Association does not Aown@ or control
the common areas.








Under these facts, the actual
legal ownership of the common areas is irrelevant.  The primary issue is whether the Developer,
in 1999, retained the right to unilaterally amend the plat or create and burden
the common areas for the benefit of a different association by granting it an
easement.  The answer is ANo.@  Restrictive covenants that run with the land,
such as these, generally burden and govern all lots within the subdivision to
which they were intended to apply.  See
generally Evans v. Pollock, 796 S.W.2d 465, 466 (Tex. 1990) (explaining
implied reciprocal negative easement doctrine). 
Additionally, according to Texas statute, express designations
establishing the methods for extending, adding, or modifying such restrictions
control over other statutory provisions for same.  Tex.
Prop. Code Ann. ' 204.003
(Vernon Supp. 2004-05).  Thus, only if
the Developer followed the specific procedure for amending the restrictions or
the plat as set forth in the covenants could it have had the right to create
such an easement for the benefit of some entity or owner other than the
Association and its lot owners.  See
Miller v. Elliott, 94 S.W.3d 38, 43 (Tex. App.CTyler 2002, pet. denied). 
Unchallenged findings of fact twenty-three and twenty-four find that
neither the easement nor the deed were recorded with the required seventy
percent approval of lot owners.  Thus,
conclusion of law six, which invalidates the easement created for the benefit
of The Villas, and conclusion of law eight, which invalidates the deed to the
Association subject to the easement, are proper.  








Additionally, regardless of
ownership, the lots comprising the common areas were and are subject to the
restrictive covenants created by the original dedication and restrictions as
well as any amendments to them.  Once an
association shows that a plan or scheme exists for the benefit of all lot
owners, it has shown a right to enforcement of such covenants and
restrictions.  McCart v. Cain, 416
S.W.2d 463, 465 (Tex. App.CFort Worth 1967, writ ref=d n.r.e.).  Thus, we agree with
the trial court that these lots were dedicated as open space common areas to be
maintained for the benefit of the Association and lot owners and at the expense
of the Association.  Additionally, we
note that the trial court concluded in conclusion of law three that when lots
are conveyed with Areference to
a plat, the designation of any recreational areas for the exclusive use of lot
owners become part of the deed by incorporation by reference,@ citing Anderson v. McRae, 495 S.W.2d 351, 359 (Tex.  App.CTexarkana 1973, no writ).  This
is a correct statement of law.  Issues
one, three, and four are overruled.

C. 
Estoppel in Pais








In appellants= second issue, they contend the trial court erred in rendering  judgment based upon the theory of estoppel in
pais because there were no pleadings to support this theory in the Association=s live pleading at the time of trial. 
Appellants also complain that the evidence is legally and factually
insufficient to support the trial court=s conclusion that estoppel in pais Aprecludes Raman Chandler Properties, L.C. and Caldwell=s Creek, Ltd. from granting easement rights that affect the rights to
the common areas in the Caldwell=s Creek Addition, or from granting access rights to others@ when the evidence shows purchasers relied on representations
regarding the common areas, complaining of findings of fact fifteen and
sixteen, and conclusions of law nine and ten.

1.  Supplemental PleadingCProcedural Question

Addressing the procedural
complaint first, we note that appellants point to the first time the issue of
estoppel in pais was specifically asserted: 
in the Association=s written
final argument filed with the trial court.[6]  We agree that this was the first time the
theory was raised.  However, as
appellants acknowledge, the Association also filed a supplemental petition on
November 10, 2003, a few weeks after trial, that specifically set forth its
estoppel in pais theory.  Appellants
contend, however, that the pleading should be struck because the Association
failed to seek leave to file its supplemental answer post-trial as required by
rule 63.  Tex. R. Civ. P. 63. 








Leave to file an amended or
responsive pleading is required under rule 63. 
But rule 63 does not apply to this situation; rule 67 on amendments to
conform pleadings to issues tried by consent applies.  Tex.
R. Civ. P. 63, 67.  Rule 67
likewise requires leave to file.  Tex. R. Civ. P. 67.  However, appellants made no objection to the
Association=s trial
amendment.  Failure to object at trial
preserves nothing for review on appeal.  Tex. R. App. P. 33.1; Wright v. Pino,
163 S.W.3d 259, 263 (Tex. App.CFort Worth 2005, no pet.); City of Denton v. Mun. Admin. Servs.,
Inc., 59 S.W.3d 764, 773 n.6 (Tex. App.CFort Worth 2001, no pet.). 
Further, when it is clear that the parties tried a theory by consent,
such as occurred here, we will not disregard it on appeal.  See Compass Bank v. MFP Fin. Servs., Inc., 152
S.W.3d 844, 854-55 (Tex. App.CDallas 2005, pet. denied); Frazier v. Havens, 102 S.W.3d 406,
411 (Tex. App.CHouston
[14th Dist.] 2003, no pet.); Mitchell v. LaFlamme, 60 S.W.3d 123, 133
(Tex. App.CHouston
[14th Dist.] 2000, no pet.).








The Association asserted its
estoppel theory as a bar to appellants= right to convey the lot owners= and the Association=s rights away.  The Association
claimed that appellants made representations to prospective lot owners, who
comprise the Association, by virtue of the recorded plats, the deed
restrictions, marketing materials, and testimony of one of the lot owners that
specified areas would be maintained for the common use and benefit of all the
lot owners.  In other words, people
purchased lots in this particular subdivision in reliance on the proposed
development as represented to prospective purchasers in all of these
materials.  This evidence and testimony
were admitted without objection.  We
therefore conclude that this theory was tried by consent, that the trial court
did not err in allowing an amendment to include the estoppel theory, and that
we may consider this theory on appeal as well. 
See Reed v. Wright, 155 S.W.3d 666, 670 (Tex. App.CTexarkana 2005, pet. denied). 
This portion of appellants= second issue is overruled.

2.  Sufficiency Challenge to Estoppel in Pais
Theory

Turning to appellants= sufficiency complaints, we have defined estoppel in pais as a
principle preventing one party=s conductCwhich
induces another to act in a particular mannerCfrom allowing it to adopt an inconsistent position and thereby cause
loss or injury to another party.  Super
Wash, Inc. v. City of White Settlement, 131 S.W.3d 249, 260 (Tex. App.CFort Worth 2004, pet. granted). 
AThe linchpin for equitable estoppel is equity‑fairness.@  Id.  AEstoppel is defensive in character, and its function is to preserve
rights, and not to bring into being an independent cause of action.@  Alamo Cmty. Coll. Dist. v.
Browning Constr. Co.,131 S.W.3d 146, 160 (Tex. App.CSan Antonio 2004, pet. filed) (citing Hermann Hosp. v. Nat'l
Standard Ins. Co., 776 S.W.2d 249, 254 (Tex. App.CHouston [1st Dist.] 1989, writ denied)).








Appellants complain of legal
and factual insufficiency of the evidence to support findings fifteen and
sixteen and conclusions of law nine and ten, all relating to the Association=s estoppel theory.  Appellants
say the evidence does not support the trial court=s conclusions that the lot owners retained the exclusive rights to the
common areas and that these exclusive rights were an inducement to prospective
buyers to purchase lots in the Addition. 
Likewise, they contend the evidence does not support a finding that
Steve McGee, a lot owner who testified about the representations and factors he
considered in purchasing a lot, was induced to purchase his lot based upon the
amended plat and what it showed.  The
record, however, supports the trial court=s findings.

Testimony showed that
appellants provided prospective lot purchasers with plats and brochures showing
the common areas.  Likewise, the plats
admitted into evidence showed dedicated common areas for the Ause and benefit@ of the lot
owners.  Applying the appropriate legal
and factual sufficiency standards of review, we conclude that there is more
than a scintilla of evidence to support appellee=s estoppel in pais theory and that the evidence is not so weak or the
evidence to the contrary so overwhelming that the answer should be set
aside.  Cont=l Coffee Prods. Co. v. Cazarez, 937 S.W.2d
444, 450 (Tex. 1996); Garza, 395 S.W.2d at 823.  We overrule appellants= second issue.

                                       D.  Attorneys= Fees








In appellants= fifth and sixth issues they challenge the trial court=s award of attorneys= fees to the Association under both sections 37Cdeclaratory judgmentsCand 38Cfor
claimants for services rendered, labor or material supplied, or breach of oral
or written contractsCof the civil
practices and remedies code.  Tex. Civ. Prac. & Rem. Code Ann. '' 37.009, 38.001 (Vernon 1997). 
These issues challenge conclusion of law eleven that awarded the
Association its attorneys= fees under both
provisions. 

Appellants appear to contend
that the Association is not entitled to attorneys= fees because it had not sought true declaratory relief as described
by chapter 37 of the civil practices and remedies code.  Id. ' 37.009. 
In particular, appellants contend that the Association did not seek a
declaration of its rights under a deed, but only sought to defeat a deed signed
by appellants.  Additionally, appellants
contend that the Association=s efforts to void the deed signed by appellants or to determine the
Association=s authority
as the proper association in light of appellants= actions, do not require a declaration of the Association=s rights or authority.  We
disagree.








The determination of the
propriety of an award of attorneys= fees is a question of law to be determined by the court.  Willis v. Donnelly, 118 S.W.3d 10, 45
(Tex. App.CHouston
[14th Dist.] 2003, pets. granted).  AWe review a trial court's conclusions of law de novo as legal
questions.@  Hawkins v. Ehler, 100 S.W.3d 534, 542
(Tex. App.CFort Worth
2003, no pet.); Boyd v. Boyd, 67 S.W.3d 398, 404 (Tex. App.CFort Worth 2002, no pet.); Hitzelberger v. Samedan Oil Corp.,
948 S.W.2d 497, 503 (Tex. App.CWaco 1997, pet. denied). 
Conclusions of law will be upheld on appeal if the judgment can be
sustained on any legal theory supported by the evidence.  Boyd, 67 S.W.3d at 404.

Chapter 37 authorizes courts
to determine Arights,
status, and other legal relations@ and to make such declarations in either an affirmative or negative
form.  Tex.
Civ. Prac. & Rem. Code Ann. ' 37.003(a), (b).  A person
interested 

under
a deed, will, written contract, or other writings constituting a contract or
whose rights, status, or other legal relations are affected by a statute,
municipal ordinance, contract, or franchise may have determined any question of
construction or validity arising under the instrument, statute, ordinance,
contract, or franchise and obtain a declaration of rights, status, or other
legal relations thereunder.

 

Id. ' 37.004(a).  This provision,
however, is not to be construed as limiting or restricting the exercise of the Ageneral powers conferred . . . in any proceeding in which declaratory
relief is sought.@  Id. ' 37.003(c).  In such declaratory
actions, a trial court has discretion to award attorneys= fees to any of the parties.  Id.
' 37.009; Ridge Oil Co. v. Guinn Invs., Inc., 148 S.W.3d 143,
161-62 (Tex. 2004); Bocquet v. Herring, 972 S.W.2d 19, 20-21 (Tex.
1998).








These provisions clearly
authorize a trial court to interpret the rights, obligations, and duties of
both a developer of a subdivision and the resulting homeowners= association that is ultimately created under the developer-created
plat, restrictive covenants, and deeds. 
The trial court=s findings
of fact clearly set forth and declare the rights of the Developer, the lot
owners, and the  Association.

For example, finding of fact
five finds that A[t]he
Dedication and Restrictions set forth the time and manner in which the
homeowner=s [sic]
association for Caldwell=s Creek
Addition was to be formed.@  Also, finding of fact six
finds that A[p]ursuant
to the Dedication and Restrictions, easements are reserved as shown on the
recorded subdivision plat.@  Likewise, findings of
fact  ten and eleven find that the
Developer=s power of
attorney to Aexercise, or
perform any act . . . in connection with, or relating to the Dedication and
Restrictions . . . .  [or] to sign,
execute, acknowledge, deliver, or record any instruments which modified the
terms of the Dedication and Restrictions expired@ on May 9, 1997.  This date is
long before the Developer=s December
17, 1999 attempt to create the Easement Agreement granting rights to adjacent
landowners of The Villas, by virtue of that purported easement or by the deed
executed by the Developer Asubject to@ such
easement.  These findings necessarily
include a Adeclaration@ of the rights of the Association, the lot owners, and the Developer.








Appellants challenge none of
the trial court=s findings
of fact that clearly declare the rights, duties, and powers of the parties to
this suit and ultimately support the trial court=s conclusion of law elevenCthat the Association is entitled to recover attorneys= fees under the declaratory judgments act.  Unchallenged findings of fact are binding
unless the contrary is established as a matter of law or there is no evidence
to support the findings.  Samuelson v.
United Healthcare of Tex., Inc., 79 S.W.3d 706, 708 (Tex. App.CFort Worth 2002, no pet.); see also McGalliard, 722 S.W.2d at
696; Reliance Ins. Co., 999 S.W.2d at 629.  Since none of the findings that declare the
rights of the parties to this litigation are challenged in connection with the
award of attorneys= fees and we
conclude that those findings support the trial court=s legal conclusion that attorneys= fees could be awarded, we conclude the trial court properly granted
the Association its attorneys= fees under the declaratory judgments act.  We overrule appellants= fifth issue.








Under appellants= sixth issue, they challenge the propriety of any award to the
Association for its attorneys= fees under chapter 38 of the civil practices and remedies code.  See Tex.
Civ. Prac. & Rem. Code Ann. ' 38.001.  We note, however, that
the final judgment awarded appellee its attorneys= fees under both chapters 37 and 38 of the code.  Because we have already determined that the
award of attorneys= fees was
appropriate under at least chapter 37 of the code as set forth in conclusion of
law eleven, it is unnecessary for us to also determine whether the award was
appropriate under chapter 38.  See Tex. R. App. P. 44.1(a); see also
Loaiza v. Loaiza, 130 S.W.3d 894, 904 (Tex. App.CFort Worth 2004, no pet.). 
Because the judgment for attorneys= fees is supportable under at least one of the Association=s theories, we overrule appellants= sixth issue.

                                          V.  Conclusion

Having overruled all of
appellants= issues on
appeal, we affirm the judgment of the trial court.

 

 

TERRIE LIVINGSTON

JUSTICE

 

PANEL A:   CAYCE, C.J.; LIVINGSTON and MCCOY, JJ.

 

DELIVERED:  September 22, 2005











[1]Raman
Chandler Properties, L.C. was one of the named defendants in the trial court
below.  We note, however, that both Raman
Chandler Properties, L.C. and Raman Chandler Properties, Inc. have executed
documents that were admitted at trial by the Developer.  Neither party has challenged Raman Chandler
Properties, L.C.=s
role or capacity in this litigation, so we do not address any issue relative to
that party=s
participation in the case.





[2]Although
appellants failed to designate which conclusions they were challenging in this
issue, we interpret this issue as a challenge to conclusions of law one and
three.





[3]Although
appellants failed to designate which conclusions they were challenging in this
issue, we interpret this issue as a challenge to conclusions of law four, six,
and eight.





[4]Although
appellants failed to designate which conclusions they were challenging in this
issue, we interpret this issue as a challenge to conclusions of law six and
eight.





[5]The
record does not reflect when each of the lots was sold or whether they were all
ever sold.  Thus, we will presume the
three-year-period ran on May 9, 1997 since the parties agree on that date as
being Athe
earlier@ date
upon which the Developer=s
right to amend the plat expired.  In any
event, trial court=s
finding of fact four states that the dedication and restrictions for the
Addition were filed on May 9, 1994, and agreed to an unchallenged finding of
fact ten states that the Developer=s authority to exercise the
power of attorney contained within the dedication expired on May 9, 1997.





[6]The
trial court instructed the parties to submit their closing arguments to the
trial court in written form.