**In The**

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-18-00013-CV**

_____

**MARK A. BOLLETER, EHREN C. BOLLETER, SWEN ERIC SPJUT, GWENDOLYN JULIA SPJUT, JUSTIN DANCER AND JENIFER A. DANCER, Appellants**

**V.**

**GRAND LAKE ESTATES PROPERTY OWNERS' ASSOCIATION, INC., Appellee**

**On Appeal from the 284th District Court**
**Montgomery County, Texas**
**Trial Cause No. 16-10-12136-CV**

**MEMORANDUM OPINION**

In three appellate issues, Mark A. Bolleter, Ehren C. Bolleter, Swen Eric Spjut, Gwendolyn Julia Spjut, Justin Dancer, and Jenifer A. Dancer (collectively, the Homeowners) ask the Court to reverse the trial court's ruling granting the motion for summary judgment filed by Grand Lake Estates Property Owners' Association, Inc. (the POA) on their claims for trespass, conversion of their property, and for

1

`

injunctive relief. In issue one, the Homeowners argue the covenants in their deeds did not authorize the POA to deepen and widen the drainage by digging ditches in the easements that exist on their lots. In issue two, they contend their response to the POA's motion raises issues of material fact on whether the POA could enforce the covenants, given their claim that the POA acted arbitrarily or capriciously when it decided to construct drainage ditches across and behind their lots. In their third issue, the Homeowners assert the trial court erred by concluding that a disclaimer of liability provision in the covenants, which applies to damages to fences, shrubbery, trees, lawns, or to any other property, allowed the POA to avoid the Homeowners' claims under the circumstances that were at issue in the suit.

We conclude the trial court was authorized to reject the Homeowners' argument that the covenants did not authorize the POA, through its contractor, to enter the Homeowners' respective lots to construct improvements that were designed to improve drainage in Grand Lake Estates. Thus, we hold the summary-judgment evidence authorized the trial court to grant the POA's motion for summary judgment. We further conclude the Homeowners waived their right to raise the arguments they make to support their second issue. Finally, given our resolution of the Homeowners' first issue, we need not reach the Homeowners' third issue, which suggests the limitation of liability provision found in the covenants that favor the

2

`

POA do not apply to the damages the Homeowners sought to recover in their suit. For the reasons explained fully in the following opinion, the trial court's judgment is affirmed.

## Background

The Homeowners own lots located on the south side of Connie Lane in section six in a Montgomery County community known as Grand Lake Estates. In their pleadings, the Homeowners alleged the plat for their lots, which is on file in Montgomery County's property records for their subdivision, shows that a 30-foot-wide drainage easement exists between lot 11, which is owned by the Spjuts, and lot 10, which is owned by the Bolleters. The plat also shows that a 30-foot-wide utility easement exists at the back of the four lots owned by the Homeowners, and the four lots are all located on the south side of Connie Lane.[1] To address drainage problems in the subdivision, the POA hired a construction company to enlarge the existing drainage in the drainage easement between lots 10 and 11 and to enlarge an existing swale, located in the utility easement running behind the lots on the south side of Connie Lane. The construction company dug ditches in the easements, and the Homeowners then sued the Association for trespass, conversion, and asked the trial

---

[1] The Spjuts own lots 11 and 12. The Dancers own lot 9. The Bolleters own lot 10.

court to grant a mandatory injunction to require the POA to return the Homeowners' lots to the condition they were in before the contractor worked in the easements on the Homeowners' lots.[2]

In October 2017, the POA filed a motion for summary judgment. In it, the POA argued the covenants that burdened the Homeowners' lots allowed it to enter the easements to dig the ditches at issue for the purpose of improving drainage without the Homeowners' consent.[3] The POA's motion states that under a written agreement between the POA and the developer signed in 2008, the developer transferred its rights to the POA to use the easements in the subdivision for the

---

[2] While the case was on appeal, the construction company settled the claims the Homeowners filed against it. Based on the construction company's request, the Court then dismissed that construction company from the appeal.

[3] The summary judgment evidence includes a copy of the covenants that applied to the Homeowners' lots. Section 2.02 of the covenants states that the "Developer reserves for public use[] the utility easements shown on the plat . . . for the purpose of constructing, maintaining and repairing a system or systems of . . . storm drainage (surface of [read "or"] underground) . . . the Developer sees fit to install in, across and/or under the property. Developer further expressly reserves the right to enter upon any lot for the purpose of improving, constructing or maintaining any natural or man[-]made drainage pattern, area or easement. All utility easements in the subdivision may be used for the construction of drainage swales or detention ponds in order to provide for improved surface drainage of the Reserves, Commons Area, and/or lots."

purpose of improving drainage.[4] According to the POA's motion, the covenants include a hold-harmless provision, which prevents the Homeowners from holding it liable for the work completed by the construction company it hired to perform the work in the easements burdening the Homeowners' lots.[5]

In their response to the POA's motion, the Homeowners argued that construction in the drainage and utility easements is not authorized under the covenants that burden their lots. According to the Homeowners, the covenants allowed the POA to repair or maintain the existing drainage the developer installed in the subdivision but did not allow the POA to install more drainage. The response states that while the POA had the right to build swales or detention ponds in the utility easements, that right did not allow it to construct an eight-foot-deep ditch. As to the hold-harmless provision, the Homeowners argued it did not apply to an unauthorized entry.

_____

[4] The summary-judgment evidence includes a signed copy of the agreement that exists between the POA and the developer of Grand Lake Estates. Section four of the POA's agreement with the developer provides that subject to its reservation of certain rights, the developer transferred and assigned the rights it held under the covenants burdening the subdivision to the POA.

[5] Section 2.02 of the covenants states that "[n]either the developer nor . . . other authorized entity using the easements herein referred to shall be liable for any damages done by them or their . . . agents . . . to fences, shrubbery, trees and lawns or any other property of the owner on the property covered by said easements."

After the trial court considered the POA's motion by submission, it granted the POA's motion and rendered judgment that the Homeowners take nothing in the claims they filed against the POA.

Standard of Review

Appellate courts review a trial court's rulings on a traditional motion for summary judgment under a *de novo* standard.[6] Under that standard, the summary-judgment record is reviewed "in the light most favorable to the nonmovant, indulging every reasonable inference and resolving any doubts against the motion."[7] If the party moving for summary judgment proves that it is entitled to judgment as a matter of law, the burden then shifts to the party opposing the motion to produce evidence sufficient to raise a genuine issue of material fact on the claims the moving party has challenged in its motion.[8] We decide whether a genuine issue of material fact exists by examining the summary-judgment evidence to determine whether reasonable and fair-minded jurors could differ in the conclusions they could reach

---

[6] *See Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003).

[7] *City of Keller v. Wilson*, 168 S.W.3d 802, 824 (Tex. 2005).

[8] *M.D. Anderson Hosp. & Tumor Inst. v. Willrich*, 28 S.W.3d 22, 23 (Tex. 2000); *see also* Tex. R. Civ. P. 166a(c).

6

from the evidence the trial court considered when deciding the motion.[9] Nevertheless, "[i]ssues not expressly presented to the trial court by written motion, answer or other response [in a summary-judgment proceeding] shall not be considered on appeal as grounds for reversal."[10]

Unambiguous covenants found in deeds are treated like the terms of a contract.[11] In construing written contracts, the court must examine the contract and consider all of it to harmonize and give effect to all the contract's provisions so that none are rendered meaningless.[12] We look to the objective intent of the party that drafted the deed to give the deed's covenants their intended effect.[13] We look to the terms in the deed as a whole and in light of the circumstances that existed when the deed was signed to give the words the meaning they commonly held when the deed was signed unless the terms are specifically defined.[14] Covenants in deeds cannot

---

[9] *See Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 755 (Tex. 2007).

[10] Tex. R. Civ. P. 166a(c).

[11] *Tarr v. Timberwood Park Owners Ass'n, Inc.*, 556 S.W.3d 274, 280 (Tex. 2018).

[12] *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983).

[13] *Tarr*, 556 S.W.3d at 280.

[14] *Id.*

"'be enlarged, extended, stretched or changed by construction.'"[15] And we must avoid "any 'construction that nullifies a restrictive covenant provision.'"[16]

Courts, not juries, are tasked with deciding whether a covenant is ambiguous.[17] Covenants are ambiguous if they "'are susceptible to more than one reasonable interpretation[.]'"[18] That said, "'covenants are unambiguous as a matter of law if [they] can be given a definite or certain legal meaning.'"[19] Thus, a "'[m]ere disagreement over the interpretation of a restrictive covenant does not render it ambiguous.'"[20]

### The Covenants

In the motion for summary judgment and response, the parties relied on covenants in the Homeowners' lots to support their respective arguments over whether the POA had the right to dig ditches in the easements on the lots at issue.

---

[15] *Id.* (quoting *Wilmoth v. Wilcox*, 734 S.W.2d 656, 657 (Tex. 1987)).

[16] *Id.* (quoting *Pilarcik v. Emmons*, 966 S.W.2d 474, 479 (Tex. 1998)).

[17] *Id.* at 289.

[18] *Id.* (quoting *Pilarcik,* 966 S.W.2d at 478).

[19] *Id.*

[20] *Id.* (quoting *Buckner v. Lakes of Somerset Homeowners Ass'n.*, 133 S.W.3d 294, 297 (Tex. App.—Fort Worth 2004, pet. denied)).

The motion for summary judgment and response that was before the trial court when it ruled relied on the following covenants:

## DEFINITIONS

. . .

Section 1.06. "Commons Area" shall mean all real property (including the improvements thereto) within the subdivision owned by the Developer and/or the Association for the common use and enjoyment of the owners and/or any real property and improvements, including, but not limited to, drainage and utility easements and other facilities and areas designated on the Plat within the Common Area to which the owners may hereafter become entitled to use.

. . .

## RESERVATIONS, EXCEPTIONS, AND DEDICATIONS

Section 2.02. Easements. Developer reserves for public use, the utility easements shown on the plat or that have been or hereafter may be created by separate instrument recorded in the Real Property Records of Montgomery County, Texas, for the purpose of constructing, maintaining and repairing a system or systems of electric lighting, electric power, telegraph and telephone line or lines, gas lines, sewers, water lines, storm drainage (surface  of [*sic*—read "or"] underground), cable television, or any other utility the Developer sees fit to install in, across and/or under the property. Developer further expressly reserves the right to enter upon any lot for the purpose of improving, constructing or maintaining any natural or man[-]made drainage pattern, area or easement. All utility easements in the subdivision may be used for the construction of drainage swales or detention ponds in order to provide for improved surface drainage of the Reserves, Commons Area; and/or lots. The record owner of any detention pond lot shall, subject to applicable utility easements, have the exclusive use and enjoyment of such pond and may enhance the appearance thereof with appropriate vegetation and structures. No owner shall place any fill dirt or other material in the drainage

9

easement. Provided however, any owner may increase the depth, volume or capacity of said drainage casement. Such improvements must be in conformity with the Architectural Control Committee or other authorized governmental agency. Owner shall maintain and repair the dams, berms, and swales forming such pond provided, however, the Association shall ultimately be responsible for the maintenance and repair of such dams, berms, and swales. In the event of the failure of owner to maintain and repair the dams, berms, and swales, the Association, after 10 days written notice, may enter upon said lot(s) so as to maintain and/or repair the dams, berms, and swales and may charge owner(s) of such lot(s) for the cost of such work and associated materials plus a 10% fee. In regards to Article VI, Section 6.06, as it relates to detention facility repair and maintenance, these covenants hereby authorize, but do not obligate Montgomery County, or other authorized governmental agency to exercise such maintenance and assessment power in place of the Association and to secure the assessed costs with a lien against the lot(s). Should any utility company furnishing a service covered by the general easement herein provided request a specific easement by separate record, Developer, without the joinder of any other owner, shall have the right to grant such easement on said property without conflicting with the terms hereof. Any utility company serving the subdivision and/or any utility district serving the subdivision shall have the right to enter upon any utility easement for the purpose of installation, repair and maintenance of their respective facilities. Neither developer nor any utility company, water district, political subdivision or other authorized entity using the easements herein referred to shall be liable for any damages done by them or their assigns, agents, employees, or servants, to fences, shrubbery, trees and lawns or any other property of the owner on the property covered by said easements.
. . .

### DEVELOPER'S RIGHTS AND RESERVATIONS

. . .

Section 7.02. <u>Right to Construct Additional Improvements in Common Area</u>. Developer shall have and hereby reserves the right

(without the consent of any other Owner), but shall not be obligated to, construct additional improvements within the Common Area at any time and from time to time in accordance with this Declaration for the improvement and enhancement thereof and for the benefit of the Association and Owners. Developer shall, upon the Control Transfer Date, convey or transfer such improvements to the Association and the Association shall be obligated to accept title to, care for, and maintain the same as elsewhere provided in this Declaration.

Construction of the Covenants

According to the Homeowners, section 2.02 of the covenants applies to utility easements in the subdivision but not to drainage easements. Under the Homeowners' interpretation of section 2.02, the POA had no authority to dig a ditch in the drainage easement that exists between the Spjut's and the Bolleter's lots. Section 2.02, however, states the developer could enter the lots in the subdivision for the purpose of "improving, constructing or maintaining any natural or man[-]made drainage pattern, area or easement." This reservation is not restricted to utility easements. Additionally, section 7.02 of the covenants reserved to the developer the right to "construct additional improvements within the Common Area." Based on the definition of the term "Commons Area," in section 1.06 of the covenants, the developer had the right to construct additional improvements in both the drainage and the utility easements in the subdivision. Moreover, the parties to the appeal do not dispute that, as applied to the utility and the drainage easements that are at issue, the POA had the rights reserved by the developer in the subdivision.

11

Thus, with respect to both utility and drainage easements, the unambiguous language relevant to the Homeowners' deeds allowed the POA to use the easements at issue to construct, improve, and maintain the natural and the man-made drainage within the subdivision. The Homeowners suggest that section 2.02 allowed the developer only to preserve the drainage the developer originally installed when it built the subdivision, but that the covenants did not authorize the developer "to create something altogether new unless that something is a swale or pond in a utility easement[.]" Yet the Homeowners' interpretation of the reservations fails to recognize that section 2.02 authorized the developer to enter the lots in the subdivision to perform construction in the easements for the purpose of improving drainage. It is undisputed that the POA acquired the developer's rights, and the Homeowners have never claimed the ditches were not built for the purpose of improving drainage patterns in the subdivision.

Finally, with respect to the ditches the POA had built in the utility easement at the rear of the Homeowners' lots, the Homeowners argue that section 2.02 allowed the POA to construct a swale or pond but not a ditch. In affidavits the Homeowners filed in the trial court to support their response, Swen Spjut, Justin Dancer and Mark Bolleter acknowledge that a swale already existed in the utility easement before the POA dug what they described as a steep-sided, eight-foot-deep ditch. Nonetheless,

12

the Homeowners never claimed that the ditch was not built for the purpose of improving drainage, and section 2.02 expressly allows the POA the right to construct "storm drainage, (surface o[r] underground)," that the POA saw fit to install "across and/or under the property." Thus, the POA's rights of construction in the utility easement was not limited to building swales or detention ponds there.[21]

We conclude the covenants burdening the Homeowners' lots are capable of being given a certain and definite legal meaning consistent with the stated purpose of the easements that are at issue in the appeal. We further conclude that the POA acquired the rights the developer reserved to itself, which allowed the POA to enter the lots at issue and dig ditches there. Having construed the reservations that burden the Homeowners' deeds, we conclude the POA had the right to enter the Homeowners' lots and to dig the ditches at issue.[22] For these reasons, we overrule the Homeowners' first issue. Given our resolution of issue one, we further conclude that we need not reach the arguments the Homeowners raise in issue three, which addressed the hold harmless provision found in the last sentence of section 2.02.[23]

---

[21] *See Coker*, 650 S.W.2d at 393.

[22] *Tarr*, 556 S.W.3d at 280.

[23] Tex. R. App. P. 47.1 (requiring opinions to address each issue that is necessary to resolving the appeal). Finally, even were we to address the issue, we would hold the Homeowners invited any error concerning their conversion claim by

Arbitrary, Capricious and Discriminatory Action

In issue two, the Homeowners argue the trial court's ruling should be overturned because the POA acted in an arbitrary, capricious, or discriminatory manner when it decided to construct the ditches in the drainage and utility easements on their lots. According to the Homeowners, even if the covenants give the POA the right to dig ditches in their easements, the POA's decision to place the ditches in the easements on their lots was arbitrary, capricious, or discriminatory, nullifying the rights the POA otherwise retained. In response, the POA argues the Homeowners failed to raise these arguments in their suit or in the response that the Homeowners filed to its motion for summary judgment.

The Homeowners' petition includes claims for trespass, conversion, and for injunctive relief. It does not include a claim alleging the POA acted arbitrarily, capriciously, or in a discriminatory manner. The response the Homeowners filed to the POA's motion for summary judgment also does not argue the POA's rights were nullified given the manner the POA made the decision to locate the ditches on the Homeowners' lots. The Homeowners' response to the POA's motion presented their

---

arguing in their response to the POA's motion that if the covenants permitted the construction at issue, the trial court could grant the POA's motion. *See Tittizer v. Union Gas Corp.*, 171 S.W.3d 857, 862 (Tex. 2005) ("[A] party cannot complain on appeal that the trial court took a specific action that the complaining party requested, a doctrine commonly referred to as 'the invited error' doctrine.").

14

argument to the court in the following manner: "The question presented in the Motions is do the Covenants permit the construction which was done on the Tracts? If the answer is yes, then the Court could grant the Motions." We conclude the Homeowners failed to put the trial court on fair notice of the nullification argument they are making in their second issue.

The Rules of Civil Procedure do not allow the Homeowners to raise issues in an appeal from a summary-judgment ruling that they failed to make when they were in the trial court. Under Rule 166a(c), the rule of civil procedure governing summary-judgment proceedings, appellate courts may not consider "[i]ssues not expressly presented to the trial court by written motion, answer or other response . . . as grounds for reversal."[24] The Texas Supreme Court has explained that the party opposing a motion for summary judgment must file a response in the trial court that fairly apprises the trial court and the party moving for summary judgment of the issues the party opposing the motion "contends should defeat the motion."[25]

In this case, the Homeowners failed to do that regarding issue two. As a result, the issue was not properly preserved for our review. Issue two is overruled.

---

[24] Tex. R. Civ. P. 166a(c).

[25] *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex. 1979).

Having overruled the issues required to dispose of the appeal, we affirm the trial court's judgment.

AFFIRMED.

_____
HOLLIS HORTON
Justice

Submitted on October 16, 2018
Opinion Delivered June 13, 2019

Before McKeithen, C.J., Kreger and Horton, JJ.

16