# Supreme Court of Texas

---

No. 20-0857

---

JBrice Holdings, L.L.C., and 231 W. Trioaks Lane, an individual
series of JBrice Holdings, L.L.C.,

*Petitioners,*

v.

Wilcrest Walk Townhomes Association, Inc.,

*Respondent*

---

On Petition for Review from the
Court of Appeals for the Fourteenth District of Texas

---

**Argued February 2, 2022**

JUSTICE BLAND delivered the opinion of the Court.

The law favors owners' rights to use and enjoy their property.[1]
Owners often agree to restrict these rights for the benefit of the
community, however, as they do when purchasing property subject to
neighborhood restrictive covenants.[2]  Some neighborhood covenants

---

[1] *Tarr v. Timberwood Park Owners Ass'n*, 556 S.W.3d 274, 279 (Tex.
2018).

[2] *Id.*

empower their homeowners' associations to adopt even further restrictions. Because a property owner's consent to a restriction is the foundation for its legitimacy, courts will enforce it only if the deed incorporates the restriction or authorizes its adoption at the time of purchase, or when governing law otherwise permits the restriction.[3]

In this dispute between a homeowners' association and a townhome owner, the trial court enjoined the owner from renting its townhomes for terms of fewer than seven days. The trial court ruled that the short-term rentals breached a residential-use provision found within the neighborhood's deed restrictions. The court of appeals affirmed on a different basis, holding that the homeowners' association possessed independent authority to restrict short-term rentals under Section 204.010(a)(6) of the Property Code.[4]

We conclude that neither the deed covenants nor the Property Code authorized the homeowners' association to impose a short-term rental restriction. The covenants explicitly forbid restraints on an owner's right to lease unless the restriction is contained within the neighborhood's governing documents. The governing documents, in turn, contain no covenant that restricts the duration of an otherwise

---

[3] *See id.* at 280–81 (observing that courts enforce such agreements "subject to certain well-established limitations," including that buyers must have "actual or constructive knowledge" of them upon purchase).

[4] 638 S.W.3d 712, 718 (Tex. App.—Houston [14th Dist.] 2020); Tex. Prop. Code § 204.010(a) ("Unless otherwise provided by the restrictions or the association's articles of incorporation or bylaws, the property owners' association, acting through its board of directors or trustees, may: . . . (6) regulate the use, maintenance, repair, replacement, modification, and appearance of the subdivision . . . .").

2

permissible lease. Further, the association had no statutory authority to restrict short-term rentals. Section 204.010(a)(6) does not authorize associations to adopt rules that conflict with their governing deed covenants, and the association's rules in this case conflict with the covenant providing that "there shall be no restriction on the right of any townhouse owner to lease his unit" unless it is stated in the covenants themselves. Accordingly, we reverse the court of appeals' judgment, render judgment in favor of the townhome owner, and remand the case to the trial court for the consideration of attorney's fees.

**I**

Jerry Brice purchased two townhomes in the Wilcrest Walk subdivision through his company, JBrice Holdings, L.L.C., the petitioner. JBrice then offered the townhomes for lease on a vacation rental website. The record does not contain a copy of any lease agreement, but website listings advertise the townhomes for rent for two- and three-night minimums.

The townhomes in Wilcrest Walk are subject to neighborhood deed covenants. The covenants also empower the Wilcrest Walk Townhomes Association, the respondent, to enforce the covenants and otherwise govern the community.

One of the Wilcrest Walk covenants governs leasing activity. Leases must be in writing and tenants must comply with the neighborhood covenants. This covenant, however, limits additional restraints on an owner's right to lease. A leasing restriction must be found within the covenants or in the Association's governing documents;

3

otherwise, "there shall be no restriction on the right of any townhouse owner to lease his unit":

> [A]ll leases of any townhouse units must: (i) be in writing, and (ii) provide that such leases are specifically subject in all respects to the provisions of the Declaration, Articles of Incorporation and By-laws of the Association, and that any failure by the lessee to comply with the terms and conditions of such documents shall be a default under such leases. *Other than the foregoing, there shall be no restriction on the right of any townhouse owner to lease his unit.*[5]

Thus, the leasing covenant permits owners to lease their property, so long as the lease and the owner's tenants comply with the covenants and the Association's bylaws.

Another covenant limits townhome occupancy to "private single family residence[s] for the Owner, his family, guests and tenants," and it forbids commercial uses:

> No Owner shall occupy or use his Building Plot or building thereon, or permit the same or any part thereof to be occupied or used for any purpose other than as a private single family residence for the Owner, his family, guests and tenants . . . . No Building Plot shall be used or occupied for any business, commercial, trade or professional purposes either apart from or in connection with the use thereof as a residence.

Because this residential-use clause is a part of the deed covenants, its limits apply to leased property notwithstanding the "no restriction" on leasing covenant.

---

[5] Emphasis added.

The Association demanded that JBrice stop leasing its townhomes for short-term rentals. In response, JBrice sued to enforce the covenant granting it the right to lease without restriction. JBrice observed that neither the residential-use clause nor any other covenant limits an owner's right to rent his property for a minimum duration. The Association counterclaimed, alleging breach of the residential-use provision, and it further asserted a nuisance claim.

Meanwhile, the Association adopted rules forbidding townhome rentals that would require an owner to remit state hotel tax, effectively banning rentals of fewer than thirty days.[6] JBrice amended its suit, seeking a declaration that the Association's new rules are unenforceable because they conflict with the Wilcrest Walk covenant limiting restraints on an owner's right to lease.

The trial court granted partial summary judgment to the Association, ruling that JBrice had violated the residential-use restriction. After an evidentiary hearing, the court permanently enjoined JBrice from leasing its townhomes for periods of fewer than seven days.

The court of appeals affirmed on different grounds.[7] It held that Property Code Section 204.010(a)(6) authorized the Association to adopt

---

[6] Tax Code Chapter 156 imposes a hotel occupancy tax on persons who purchase the right to use or occupy a hotel room costing more than $15 a day. Tex. Tax Code § 156.051(a). Under Chapter 156, "'hotel' includes a short-term rental," *id.* § 156.001(b), but it "does not impose a tax on a person who has the right to use or possess a room in a hotel for at least 30 consecutive days," *id.* § 156.101.

[7] 638 S.W.3d at 718.

rules banning short-term rentals. Section 204.010(a)(6) grants owners' associations in Harris County the authority to regulate property uses within their neighborhoods, provided that the regulations do not conflict with the neighborhood's deed covenants.[8] Despite the Wilcrest Walk covenant limiting the Association's power to impose restraints on an owner's right to lease, the court of appeals concluded that the Association could impose rules limiting short-term rentals because the governing documents are silent as to the specific duration of any lease.[9] We granted review.

## II

Restrictive covenants are contracts that run with the land,[10] and are "subject to the general rules of contract construction."[11] We review "a trial court's interpretation of a restrictive covenant de novo."[12] A covenant under review "may not be enlarged, extended, stretched or changed by construction."[13] Thus, to validly limit an owner's property

---

[8] Tex. Prop. Code § 204.010(a) ("Unless otherwise provided by the restrictions or the association's articles of incorporation or bylaws, the property owners' association, acting through its board of directors or trustees, may: . . . (6) regulate the use, maintenance, repair, replacement, modification, and appearance of the subdivision . . . .").

[9] 638 S.W.3d at 718.

[10] *Inwood N. Homeowners' Ass'n, Inc. v. Harris*, 736 S.W.2d 632, 635 (Tex. 1987).

[11] *Tarr*, 556 S.W.3d at 280 (quoting *Pilarcik v. Emmons*, 966 S.W.2d 474, 478 (Tex. 1998)).

[12] *Id.* (citing *Buckner v. Lakes of Somerset Homeowners Ass'n*, 133 S.W.3d 294, 297 (Tex. App.—Fort Worth 2004, pet. denied)).

[13] *Id.* (quoting *Wilmoth v. Wilcox*, 734 S.W.2d 656, 657 (Tex. 1987)).

6

use, a covenant must plainly prohibit that use.[14] Otherwise, an owner "who purchases for value and without notice takes the land free from the restriction."[15] As with contracts, courts should avoid an interpretation of one covenant that nullifies another.[16]

## A

We first determine whether short-term rentals violate an existing Wilcrest Walk deed covenant. If so, then the covenant that prohibits restraint of an owner's right to lease does not protect that use—the leasing covenant is subject to leasing conditions contained within the restrictions themselves. The Association argues that we should read the residential-use covenant to exclude short-term rentals. JBrice responds that this provision does not forbid short-term rentals, so long as those rentals comply with the neighborhood's deed restrictions, bylaws, and articles of incorporation.

The Wilcrest Walk residential-use restriction states:

> No Owner shall occupy or use his Building Plot or building thereon, or permit the same or any part thereof to be occupied or used for any purpose other than as a private single family residence for the Owner, his family, guests and tenants . . . . No Building Plot shall be used or occupied for any business, commercial, trade or professional purposes either apart from or in connection with the use thereof as a residence.

---

[14] *Id.* at 281–82. The principle that courts will give effect to covenants according to their plain meaning is "well established." *Id.* at 282.

[15] *Davis v. Huey*, 620 S.W.2d 561, 566 (Tex. 1981).

[16] *Tarr*, 556 S.W.3d at 280 (quoting *Pilarcik*, 966 S.W.2d at 479).

7

Our Court interpreted a similar residential-use covenant in *Tarr v. Timberwood Park Owners Association*.[17]  In *Tarr*, we held that covenants requiring "residential use" of the property do not exclude short-term rentals absent language requiring a minimum duration for a tenant's occupancy.[18]  The homeowners' association in that case argued that "residential" implies physical occupancy with an intent to remain for a substantial period of time.[19]  Our Court rejected this characterization because the covenant language "includes no such specification and remains otherwise silent as to durational requirements."[20]  Similarly, though the single-family-residence covenant limited the type of structure that an owner could build,  it did not limit leasing activity.[21]

In an effort to distinguish *Tarr*, the Association argues that the Wilcrest Walk residential-use covenant regulates the *use* of the property, unlike the restriction in *Tarr*, which merely regulated activity occurring *on* the property.  JBrice generates rental income from its leases, which, the Association argues, makes JBrice's *use* commercial rather than residential.  Further, in the Association's view, a short-term tenant's use is not residential; rather, courts should classify such tenants as licensees, like hotel guests, instead of true lessees.  Finally,

---

[17] *Id.* at 288.

[18] *Id.* at 290–91.

[19] *Id.* at 288.

[20] *Id.* at 291.

[21] *Id.* at 287.

the Association notes that the Wilcrest Walk covenant requires an occupant's use to be both residential and "private."

JBrice responds that *Tarr* squarely holds that "residential use" and its variants do not restrict short-term rentals absent express language in the deed covenants. Rental income does not violate the prohibition on commercial use because it is residential occupation that generates the income, not commercial activity on the property. JBrice observes that the Wilcrest Walk deed covenants set no minimum duration for townhome rentals. The "private" use restriction in the covenants refers to a resident's exclusive possession of the property, not a prohibition on short-term rentals. Finally, JBrice argues that the Association's interpretation ignores the Wilcrest Walk covenant that forbids lease restrictions by implication: other than the covenants, the articles of incorporation, and the bylaws, "there shall be no restriction on the right of any townhouse owner to lease his unit."

## B

Like the restriction in *Tarr*, the Wilcrest Walk residential-use covenant describes the permitted use of a townhome and imposes no minimum on the duration of a lease agreement.[22] The reading of "residential" the Association advances—that the term implies a lease of a particular duration—is identical to the reading we rejected in *Tarr*. We reject it here as well.

---

[22] *See id.* at 288 (observing that the use restriction provided that the tract "shall be used solely for residential purposes, except tracts designated . . . for business purposes").

The Association notes that we did not address in *Tarr* whether "establishing an LLC and generating income from [the] property" violates a residential-use covenant.[23]   In *Tarr*, we observed that "another court may reach a different conclusion if the covenant it reviews defines 'residential' or 'business' uses by specifically enumerating prohibited conduct."[24]

The Wilcrest Walk covenants, however, do not preclude rental income generated by residential occupancy, just as in *Tarr*.[25]   The townhomes are not "to be occupied or used for any purpose other than as a private single family residence *for the Owner, his family, guests and tenants*."[26]   Thus, the Wilcrest Walk covenants except tenant use from commercial activity by equating tenant use with owner, family, and guest use.   When the income derived from a use is in the form of rent, and the nature of that use is residential occupancy, then this residential-use provision does not prohibit it.   As JBrice notes, its leasing business does not occupy the premises; its tenants do.   Because tenants are included among those permitted to use the townhomes, with no expressed restriction as to the minimum duration of such use, a short-term tenant does not violate the residential-use covenant.

Nor does the required "private" character of the use impose a minimum limit on the duration of a lease.   In this context, "private"

---

[23] *Id.* at 289.

[24] *Id.* at 291.

[25] *Id.* at 290–91.

[26] Emphasis added.

10

means "for the use of one particular person or group of people only."[27] In the Wilcrest Walk covenants, such a group expressly includes "tenants," which deprives "private" of the meaning the Association assigns the term. To conclude that "private" use means "non-commercial" use would render the commercial-use prohibition—and its exception for tenants—superfluous.[28] Even if "private" ordinarily could evoke non-commercial use, the commercial use provision excepts tenant occupancy, and it requires no minimum duration for the exception to apply. In *Tarr*, we held that commercial- and business-use prohibitions do not, without more, impose a durational limit on leasing.[29] The addition of "private" in the covenant does not do so either.

The Association argues that short-term occupancy is not private, and thus it is different in character from long-term rentals. The Association equates short-term occupancy to hotel use. JBrice responds

---

[27] *Private*, New Oxford American Dictionary (3d ed. 2010). The Association seeks to equate "private" with "non-commercial," relying on the court of appeals' decision in *Wein v. Jenkins*, No. 03-04-00568-CV, 2005 WL 2170354, at *3 (Tex. App.—Austin Sept. 9, 2005, no pet.). In *Wein*, the court upheld a determination that "the phrase 'single-family, private residential purposes' does not include the operation of any 'commercial business in the nature of a hotel, "bed & breakfast," inn, or venue for parties, business meetings, or retreats.'" *Id.* at *2–3. *Tarr*, however, distinguished the uses in *Wein* from short-term rentals where business does not take place on-site. *Tarr*, 556 S.W.3d at 292 n.15.

[28] *See King v. Dall. Fire Ins. Co.*, 85 S.W.3d 185, 193 (Tex. 2002) (noting that courts construe contracts to "give effect to all contract provisions, and render none meaningless").

[29] *Tarr*, 556 S.W.3d at 290–91.

11

that the lease agreement is no different in either case.[30]  We decline to differentiate between short-term and long-term tenancy in a manner that the covenants themselves do not.  The Association introduced no agreement to demonstrate that JBrice granted a license rather than a tenancy to occupants of its townhomes.

We reject the Association's attempt to categorize leases of a particular term as something other than a lease.  A lease is "[a] contract by which a rightful possessor of real property conveys the right to use and occupy the property in exchange for consideration[.]"[31]  We observed in *Tarr* that a short-term rental is a lease so long as it maintains the characteristics of a lease; namely, the right to use and occupy the property.[32]  JBrice contracts with tenants to allow them the right to exclusively occupy the townhomes for the duration specified in the rental agreements; the evidence does not indicate otherwise.  The trial court had no basis from which to conclude that JBrice's rental agreements were not leases.[33]

---

[30] The Association argues that a short-term rental is more like a hotel license because a short-term renter is a transient occupant.  JBrice's short-term rentals are advertised to the general public as a hotel alternative and are subject to occupancy tax.  In response, JBrice contends that a short-term rental is a true lease because a short-term renter contracts for the right of exclusive possession of a property.  Under *Tarr*, a short-term rental—even one subject to hotel occupancy taxes—is not a hotel use if the owner conducts no business onsite.  *See Tarr*, 556 S.W.3d at 292 & n.15.  This distinction applies here as well.

[31] *Lease*, Black's Law Dictionary (11th ed. 2019).

[32] *Tarr*, 556 S.W.3d at 290–91.

[33] JBrice's listings indicate that tenants are subject to minimum stays, house rules, and other terms.

12

Of the limits on leasing that exist within the Association's covenants, none imposes a minimum lease term. In interpreting covenants, courts do not extrapolate restrictions beyond those to which the owners agreed—particularly here, where the covenants expressly forbid it.[34] Because the Wilcrest Walk covenants do not require owners who choose to rent their townhomes to do so for a particular duration, the trial court erred in imposing a minimum lease term by injunction.

## C

Having concluded that the Wilcrest Walk covenants do not prohibit short-term rentals, we next determine whether the Property Code independently authorizes the Association to prohibit them.

In response to JBrice's suit, the Association adopted new rules that prohibit rentals subject to the state's Hotel Occupancy Tax—in other words, rentals of fewer than 30 days.[35] The court of appeals held that the Property Code authorized these rules.[36] This is error, JBrice argues, because the Wilcrest Walk covenants provide the first and last word on leasing. The "no restriction" on an owner's right to lease is a covenant that deprives the Association of the independent authority to restrict leasing, effectively preempting any rule-making authority that Section 204.010(a)(6) grants.

---

[34] *Tarr*, 556 S.W.3d at 280; *Wilmoth*, 734 S.W.2d at 657 ("The words used in the restriction, and the restriction as a whole, may not be enlarged, extended, stretched or changed by construction.").

[35] *See* Tex. Tax Code §§ 156.051(a), .001(b), & .101 (imposing Hotel Occupancy Tax on purchaser of right to use or occupy hotel room, including short-term rental, but not on permanent resident, i.e., "person who has the right to use or possess a room in a hotel for at least 30 consecutive days").

[36] 638 S.W.3d at 718.

The Association responds that the Wilcrest Walk covenants and the Association's rules do not conflict because the rules simply "flesh out and particularize" leasing so as to further define it in the deed restrictions. In addition, in the Association's view, short-term rentals do not constitute "leasing."

Section 204.010(a)(6) permits property associations within Harris County to regulate property uses within a given subdivision, unless the governing documents say the association cannot:

> *Unless otherwise provided by the restrictions or the association's articles of incorporation or bylaws*, the property owners' association, acting through its board of directors or trustees, may . . . regulate the use, maintenance, repair, replacement, modification, and appearance of the subdivision[.][37]

The important caveat at the outset of the statute prevents association actions contrary to the owners' agreements found in the deed restrictions. Our Court has upheld the statute's limitation when the deed restrictions "otherwise provided" that the association lacked authority to adopt contrary rules.[38] The property owners in *Brooks v. Northglen Association* challenged the association's assessment increases.[39] Because the deed restrictions in that case limited annual increases to a prescribed mechanism, we held that the association's unilateral assessments conflicted with the deed restrictions' explicit provisions for increasing assessments.[40]

---

[37] Tex. Prop. Code § 204.010(a)(6) (emphasis added).

[38] *Brooks v. Northglen Ass'n*, 141 S.W.3d 158, 166–68 (Tex. 2004).

[39] *Id.* at 166.

[40] *Id.* at 168.

Like the assessment increases in *Brooks*, the Association's rules prohibiting short-term rentals conflict with the Wilcrest Walk deed restrictions because the restrictions "otherwise provide" that the Association must not restrain an owner's right to lease a townhome beyond restrictions found in the neighborhood's governing documents. Absent an express covenant or bylaw, "there shall be no restriction on the right of any townhouse owner to lease his unit." "No restriction" means no restriction. The covenants are not silent as to the Association's authority to adopt additional rules affecting owners' leasing rights.

Because the Association's rules conflict with the deed restrictions, we hold that Section 204.010(a)(6) did not grant the Association independent authority to adopt them.

**D**

The Association is not without recourse against conduct of short-term tenants or rental-property owners that unduly interferes with the use and enjoyment of other owners within the community. Should seventy-five percent of the townhome owners agree, the deed restrictions permit the neighborhood to amend the covenants to restrict leasing. And, under the current version of the deed restrictions, the Association may pursue relief from a tenant's nuisance or annoyance.[41]

---

[41] The nuisance restriction provides: "No noxious or offensive activity shall be carried on upon any Building Plot, or the Common Area, nor shall anything be done thereon which may be or may become an annoyance or nuisance to the other Owners." The annoyance restriction provides:

> No activity shall be carried on upon any Building Plot or the Common Area which might reasonably be considered as giving

The Association urges us to affirm the judgment on the alternative ground that JBrice breached the annoyance and nuisance provisions. While the Association pleaded such a breach, the final judgment affords no relief based on this claim. The judgment expressly recites that the Association "non-suited its nuisance claims."[42] We thus decline the Association's request to uphold the judgment based on a liability theory that the trial court did not find.

*     *     *

We hold that the deed restrictions in this case do not prohibit short-term rentals. We further hold that Property Code Section 204.010(a)(6) does not independently authorize a homeowners' association to adopt rules prohibiting short-term rentals when the neighborhood covenants expressly limit restraints on an owner's right to lease not found within the covenants themselves. Because neither the deed covenants nor the Property Code authorizes the Association's limits on short-term leasing, the trial court erred in granting injunctive relief forbidding short-term rentals. We reverse the judgment of the

---

annoyance to neighbors of ordinary sensibilities and which might be calculated to reduce the desirability of the Properties as a residential neighborhood . . . . The Board of Directors of the Association shall have the sole and exclusive discretion to determine what constitutes an annoyance.

[42] This is consistent with the Association's representations at final judgment. The trial court did not adopt findings of fact or conclusions of law, but the Association proposed conclusions that premised relief based only on violations of the residential-use provision and the Association's authority to adopt amended rules barring short-term rentals. Consistent with the trial court's final judgment incorporating the Association's nonsuit of "its nuisance claims," the Association did not request findings or conclusions that JBrice had breached the nuisance or annoyance deed covenants.

16

court of appeals, vacate the permanent injunction, and remand the case to the trial court for consideration of attorney's fees.

Jane N. Bland
Justice

**OPINION DELIVERED:** April 22, 2022